```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,      )   CRIMINAL NO. 09-00345 SOM
                               )
          Plaintiff,           )   ORDER DENYING MOTION TO
                               )   DISMISS COUNTS 1 TO 8 OF THE
     vs.                       )   FIRST SUPERSEDING INDICTMENT
                               )
ALEC SOUPHONE SOU,     (01)    )
MIKE MANKONE SOU,      (02)    )
                               )
          Defendants.          )
_____)
```

ORDER DENYING MOTION TO DISMISS COUNTS 1 TO 8
OF THE FIRST SUPERSEDING INDICTMENT

I.   INTRODUCTION.

Defendants Alec and Mike Sou have been charged with conspiring to obtain forced labor from 44 Thai nationals between 2003 and 2005.  The First Superseding Indictment ("Indictment") charges one count of conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371 and 1589, five counts of forced labor in violation of §§ 1589 and 1594, and two counts of document servitude allegedly committed in the course of violating § 1589.  In addition, the Sous are charged with one count of visa fraud conspiracy, two counts of harboring aliens for financial gain, and one count of obstructing or impeding an official proceeding.  Their trial is scheduled to begin on July 27, 2011.

The Sous have moved to dismiss the eight counts of the Indictment that are premised on allegations of forced labor. They argue that the conduct alleged in the Indictment, specifically, that the Sous obtained forced labor via threats

relating to economic harm, was not proscribed under the version of § 1589 in effect at the time of their alleged wrongdoing. They also raise a constitutional challenge to the Indictment, arguing that the phrase "serious harm" contained in § 1589 is so vague that its application in this case violates the Sous' due process rights. For the reasons stated below, the Court denies the Sous' Motion to Dismiss.

II.     BACKGROUND.

Count 1 of the Indictment alleges that the Sous participated in a conspiracy to commit forced labor between April 1, 2003, and February 8, 2005. The object of the conspiracy was an alleged scheme to:

> obtain and maintain a source of cheap and
> compliant labor by using false promises to
> entice workers to pay substantial up-front
> recruitment fees; by inducing workers, in
> reliance on the false promises, to pay the
> recruitment fee by obtaining high-interest
> loans secured by their family homes and
> subsistence lands as collateral; and to
> compel the workers' continued labor and
> service through threats to deport the workers
> or send them back with no way to pay off
> their debt, thus holding the workers in fear
> of serious economic harm, including loss of
> family property.

Indictment ¶ 7, ECF No. 127. The Indictment alleges:

> [The Sous] compelled the continued labor and
> service of the Thai workers by threatening to
> deport the workers or send them home for
> complaining about wages, work conditions,
> confiscation of passports, and denial of
> promised visa extensions, knowing that such
> threats placed the workers in fear of serious

> economic harm, including loss of family property and subsistence land used to secure substantial financial debts, leaving the workers and their families homeless and destitute.

Id. ¶ 17. Count 1 of the Indictment alleges that this conduct violated 18 U.S.C. §§ 371 and 1589(a). Indictment p. 12.

Counts 2 through 6 allege that, between June 1, 2004, and February 28, 2005, the Sous "did knowingly provide and obtain, and attempt to provide and obtain, the labor and services of [R.U.S. (Count 2), S.W. (Count 3), C.P. (Count 4), S.P. (Count 5), and S.J. (Count 6)], [] Thai national[s], by means of a scheme, plan and pattern intended to cause [R.U.S., S.W., C.P., S.P., and S.J.] to believe that if [they] did not perform such labor and services, that [they] and another person would suffer serious harm." Indictment pp. 13-15. Counts 2 through 6 each allege that this conduct violated 18 U.S.C. §§ 1589(a) and 1594(a) and (2).

Counts 7 and 8 of the Indictment charge the Sous with document servitude. The Indictment alleges that, between September 4, 2004, and November 30, 2004:

> [The Sous] knowingly destroy[ed], conceal[ed], remov[ed], confiscat[ed], or possess[ed] any actual or other purported passport or other immigration document, or any other actual [or] purported government identification document of [S.P. (Count 7) and R.U.S. (Count 8)]: (a) in the course of a violation of 18 U.S.C. § 1589; [and] (b) with intent to violate 18 U.S.C. § 1589 . . . .

3

See Indictment pp. 15-17. Counts 9 through 12, which are not at issue in the Sous' Motion to Dismiss, charge the Sous with visa fraud conspiracy (Count 9), harboring aliens for financial gain (Counts 10 and 11), and obstructing or impeding an official proceeding (Count 12).

Although the Indictment alleges a violation of § 1589(a), 18 U.S.C. § 1589 did not contain a subpart (a) at the time of the acts alleged in the Indictment. Instead, the statute read as follows:

> Whoever knowingly provides or obtains the labor or services of a person—
>
> > (1) by threats of serious harm to, or physical restraint against, that person or another person;
> >
> > (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
> >
> > (3) by means of the abuse or threatened abuse of law or the legal process,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1589 (2000). In 2008, Congress amended the statute, in relevant part, to read as follows:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--

4

> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> >
> > (2) by means of serious harm or threats of serious harm to that person or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> >
> > (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).
>
> . . .
>
> (c) In this section:
>
> . . .
>
> > (2) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

See 18 U.S.C. § 1589, 2008 Amendments, Pub. L. 110-457, § 222(b)(3), 122 Stat. 5044, 5068-69 (Dec. 23, 2008).

III.     LEGAL STANDARD.

Pursuant to Fed. R. Crim. P. 12(b), "any defense, objection, or request that the court can determine without a trial of the general issue" may be raised before trial by motion. In determining a motion to dismiss an indictment, "a court is limited to the face of the indictment and must accept the facts alleged in that indictment as true." <u>United States v. Ruiz-Castro</u>, 125 F. Supp. 2d 411, 413 (D. Haw. 2000) (citing <u>Winslow v. United States</u>, 216 F.2d 912, 913 (9th Cir. 1954)). An indictment fails when "the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." <u>United States v. Panarella</u>, 277 F.3d 678, 685 (3d Cir. 2002).

IV.     ANALYSIS.

The Sous argue that Counts 1 through 8 of the Indictment should be dismissed because forced labor by threats of economic harm, as alleged in the Indictment, was not proscribed under the 2000 version of § 1589, the version in effect throughout the timeframe of the charged conduct. They also argue that the phrase "serious harm" is so vague that its application in this case violates the Sous' right to due process.

    A.    <u>Whether the Indictment Is Based on Conduct Not Proscribed by the 2000 Version of § 1589.</u>

Subsection (a) of § 1589 did not exist until the statute was amended in 2008. The Sous argue that, because Counts

1 through 8 of the Indictment charge the Sous with having violated subsection (a) of § 1589, those counts must be dismissed because they are based on pre-enactment conduct. Mot. 4-7; cf. United States v. Marcus, __ U.S. __, 130 S. Ct. 2159 (2010) (noting in dicta that, had the defendant's conviction rested on conduct that pre-dated the enactment of § 1589 in 2000, the conviction would violate due process).

The court is not persuaded that the Sous were indicted for conduct that was not proscribed by the version of § 1589 that existed at the time of their alleged acts. Although § 1589 did not contain a subsection (a), it is undisputed that both versions of the law prohibit providing or obtaining labor by "threats of serious harm" or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm." See 18 U.S.C. § 1589(1), (2) (2000); 18 U.S.C. § 1589(a)(2), (a)(4) (2008). The Indictment alleges that the Sous obtained labor from the alleged victims by threats of "serious economic harm." See Indictment ¶¶ 7, 17. Thus, the Indictment's citation to 18 U.S.C. § 1589(a), rather than 18 U.S.C. § 1589(1) and (2), does not alone demonstrate that the Indictment is based on conduct that was not proscribed at the time of the Sous' alleged wrongdoing.

Moreover, the Sous provide no support for their contention that "serious harm" in the 2000 version of the statute was limited to physical harm or excludes economic harm. First, the plain language of § 1589 suggests otherwise. Cf. Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) ("[W]hen interpreting a statute . . . we construe language . . . in light of the terms surrounding it."). Section 1589(2) (2000) prohibited "knowingly provid[ing] or obtain[ing] the labor or services of a person . . . by threats of serious harm to, or physical restraint against, that person or another person . . . ." Therefore, there was a portion of the statute that confined violations to "physical" conduct--the second clause, which prohibits physical restraint of a person (or a threat of physical restraint) to obtain the victim's labor or services. The first clause, which prohibited threats of serious harm, contained no such limitation. Congress's failure to use the word "physical" in connection with the first clause at least arguably suggests that the serious harm was not limited to physical harm.

Second, as the Government points out, the term "serious harm" is not restricted to serious physical injury in common usage, instead also encompassing serious economic injury. It is a well-established canon of statutory construction that, to interpret a word or phrase in a statute, the court looks first to the word or phrase's ordinary meaning. See Schindler Elevator

8

Corp. v. United States ex rel. Kirk, __ U.S. __, 131 S. Ct. 1885, 1891 (2011) (relying on dictionary definition of the term "report" to derive its meaning in a statute); see also FCC v. AT&T Inc., __ U.S. __, 131 S. Ct. 1177, 1181-82 (2011) (relying on dictionary definitions of the term "personal" to derive the term's "ordinary meaning").

Standard definitions of "harm" do not restrict the term to physical harm, but also encompass economic injury, as is alleged in this case. Black's Law Dictionary defines "harm" as "[i]njury, loss, damage; material or tangible detriment." Black's Law Dictionary 784 (9th ed. 2009). Webster defines "harm" as "physical or mental damage: injury," and further defines "injury" as "hurt, damage, or loss sustained." Webster's Ninth New Collegiate Dictionary 554, 623 (9th ed. 1985). Finally "serious" means "dangerous; potentially resulting in death or other severe consequences." Black's Law Dictionary 1490 (9th ed. 2009); see also Webster's Ninth New Collegiate Dictionary 1075 (9th ed. 1985) (defining "serious" as including "having important or dangerous possible consequences").[1]

---

[1] The Sous' reliance on Aventis Technologies Corp. v. Barons Financial Group, Inc., No. CIV03-1624PHX JWS, 2004 WL 3019491 (D. Ariz. Apr. 14, 2004), is inapposite. In that case, a court ruled that, under Arizona law, indefinite adjectives such as the word "strong" (as in representations that an entity had a "strong technical infrastructure" and a "strong banking relationship") did not support a claim for negligent misrepresentation because such words necessarily connote an opinion, not a fact subject to misrepresentation. Id. at *2. The reasoning of that case does

9

The Indictment alleges threats of deportation, which would result in severe financial losses to the victims and their families, including the loss of the victims' homes and farms in Thailand. These facts, if proven, constitute injury and loss, and there is at least a jury question as to whether the injury and loss may be considered "serious." Therefore, the court concludes that the common, ordinary meaning of the term "serious harm" encompasses the alleged threats to the workers in this case.

Finally, circumstances surrounding the enactment of § 1589 in 2000 demonstrate that Congress intended the law to proscribe serious harm of a nonphysical nature. In 1988, the Supreme Court reversed a defendant's conviction under the pre-existing "involuntary servitude" statute, 18 U.S.C. § 1584, holding that the statute prohibited only conduct involving the use or threatened use of physical or legal coercion, and not "psychological coercion" as instructed by the district court. See United States v. Kozminski, 487 U.S. 931, 949-52 (1988). In later enacting § 1589 as a part of the broader set of provisions in the Victims of Trafficking and Violence Protection Act of 2000, 114 Stat. 1464, Congress, according to the House Conference

---

not apply to the void-for-vagueness inquiry. The Sous fail to persuade the court that requiring a jury to make a value judgment as to whether the harm facing the workers was "serious" renders the statute itself unconstitutionally vague.

Report, intended to counter <u>Kozminski</u>. <u>See</u> Victims of Trafficking & Violence Protection Act of 2000, Conference Report, H.R. Conf. Rep. No. 106-939, at 100-01, 2000 WL 1479163, at *91-*92 (Oct. 5, 2000). The Report further explained that the new § 1589:

> is intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery, such as where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence. . . . Because provisions within section 1589 only require a showing of a threat of "serious harm," or of a scheme, plan, or pattern intended to cause a person to believe that such harm would occur, <u>federal prosecutors will not have to demonstrate physical harm or threats of force against victims. The term "serious harm" . . . refers to a broad array of harms, including both physical and nonphysical</u> . . . . [A] scheme, plan, or pattern intended to cause a belief of serious harm <u>may refer to intentionally causing the victim to believe that her family will face harms such as banishment, starvation, or bankruptcy in their home country</u>.

H.R. Conf. Rep. No. 106-939, at 101, 2000 WL 1479163, at *91-*92 (emphases added). The legislative history contradicts the Sous' assertion that the 2000 version of § 1589 did not proscribe the threats of "serious economic harm" alleged in the Indictment.

Because the losses alleged in the Indictment fall within the ordinary meaning of the term "serious harm," the court declines to dismiss the Indictment on the ground that it charges

11

the Sous with conduct that was not illegal under the version of § 1589 that was operative at the time of their alleged wrongdoing. Accord United States v. Calimlim, 538 F.3d 706, 711 (7th Cir. 2008) (holding that the defendants' threats that they would not send money back to the victim's home country constituted threats of "serious harm" under the 2000 version of § 1589); United States v. Bradley, 390 F.3d 145, 150 (1st Cir. 2004) (affirming jury instruction that "[t]he term 'serious harm' includes both physical and non-physical types of harm" in appeal of conviction under 2000 version of § 1589), judgment vacated on *Booker* grounds, 545 U.S. 1101 (2005).

    B.    Whether the Law is Vague.

The Sous also contend that the 2000 version of § 1589 violates due process because the phrase "serious harm" is vague. Mot. 8-9. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Gonzales v. Carhart, 550 U.S. 124, 148-49 (2007) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question. United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir. 1985); see

also United States v. Lanier, 520 U.S. 259, 267 (1997) (explaining that the "touchstone" is whether the statute made it reasonably clear at the relevant time that the defendant's conduct was criminal).

Except in First Amendment cases, a party "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Holder v. Humanitarian Law Project, ___ U.S. ___, 130 S. Ct. 2705, 2719 (2010) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)). Therefore, the court must determine whether the phrase "serious harm" is vague as applied to the Sous' alleged actions.

Many of the reasons supporting the court's rejection of the Sous' interpretation of the pre-Amendment version of the statute apply equally to the court's determination that the pre-Amendment version is not unconstitutionally vague. First, as discussed above, the statute's plain language suggests that "harm," unlike "physical restraint," is not limited to threats of physical consequences. Moreover, the ordinary, contemporary meaning of the term "harm" as found in commonly used dictionaries encompasses economic harm, such as that alleged in the Indictment. "Reasonable person[s] of ordinary intelligence" would therefore understand from a reading of the statute that

threats of economic harm could, under certain circumstances, qualify as "serious harm" under § 1589.

The Sous argue that the term is vague as applied to their conduct because the only caselaw to discuss this statute's application to nonphysical coercion deals with conduct that is "far beyond the type of financial harm alleged in the Indictment." Mot. 8-9 (citing Bradley, 390 F.3d at 151, and United States v. Garcia, No. 02-CR-110S-01, 2009 WL 22956917 (W.D.N.Y. Dec. 2, 2003) (dealing with allegations of, inter alia, entrapping workers in housing, refusing to pay wages, threats of deportation, deprivation of food, and threats that workers who escaped would be "hunted down")). In other words, the Sous argue that, because previous defendants have threatened more severe nonphysical harm than that alleged in this case, the Sous could not have known that the alleged financial harm they threatened would be illegal.

Disallowing prosecution unless a court had previously held that less severe conduct was illegal would be an unworkable rule. The first court faced with a challenge to a new law would be forced to dismiss the indictment because there would be no precedent upon which the court could confidently sustain the indictment. The next court would find itself in the same position, and so on. The Constitution does not require that the defendant's exact actions be explicitly barred by the statute;

14

rather, the Constitution requires that the statute be "sufficiently clear to provide guidance to citizens concerning how they can avoid violating it" and to give authorities standards for enforcement. United States v. Kim, 449 F.3d 933, 942 (9th Cir. 2006) (defendant's argument that a law was vague because his conduct was not clearly prohibited "seriously misinterprets the vagueness doctrine"); see also United States v. Williams, 553 U.S. 285, 306 (2008) (explaining that what renders a statute "vague" is not the possibility that it will sometimes be difficult to determine whether an incriminating fact has been proved, "but rather the indeterminacy of precisely what that fact is").

The requirement in § 1589 that the Sous have acted "knowingly" further suggests that application of the statute to their conduct would not deprive them of due process. The Supreme Court has recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates the requirement of mens rea. See Colautti v. Franklin, 439 U.S. 379 (1979); cf. Screws v. United States, 325 U.S. 91, 101-102 (1945) (plurality opinion) ("The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an

15

offense of which the accused was unaware."); Calimlim, 538 F.3d at 711 (§ 1589's scienter requirement rendered defendants' vagueness challenge "very difficult to carry").[2]

Section 1589's requirement that the threats be made "knowingly" constitutes a mens rea requirement, providing ample notice that the statute prohibited intentionally creating the belief that serious harm would befall the victim or another if the victim did not perform the forced labor. In other words, to be convicted under this statute and as alleged in the Indictment, the Sous must have known that they were obtaining the workers' labor by "threats of serious harm to, or physical restraint against," the workers, and/or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if the [worker] did not perform such labor or services, that [worker] or another person would suffer serious harm or physical restraint." The Sous' understanding of what they were allegedly threatening is therefore crucial to conviction, and material to the court's determination that the statute is not being applied in a vague manner in this case.

The Sous also argue that the elaboration on the term

---

[2] The Sous argue that this case does not bear on the law's vagueness as applied to their conduct because it was decided in 2008. Mot. 9 n.11. The court disagrees. The legal effect of a scienter requirement was not introduced de novo by the Seventh Circuit in this case but rather is a well-established aspect of a court's void-for-vagueness inquiry.

16

"serious harm" in the 2008 amendments demonstrates that the law before that point was vague in scope. Mot. 9. While the court agrees that the 2008 version of the law is clearer, the Sous cite no law suggesting that that circumstance establishes that the previous version of the law was unconstitutionally vague. "The fact that Congress might, without difficulty, have chosen clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." United States v. Powell, 423 U.S. 87, 94 (1975) (internal quotation marks and citation omitted).

In their briefs and at the hearing on this matter, the Sous repeatedly stressed their position that it is not a crime to merely inform an employee of the practical consequences of failing to do his job, and that merely telling a worker who is here on a visa that he will be sent home if his work is unsatisfactory does not support a conviction under the forced labor statute (or that, if the law did allow such a conviction, it would fail for vagueness because the Sous would have no notice that such statements were illegal). Cf. Bradley, 390 F.3d at 151 (warning that "the phrase 'serious harm,' as extended to non-physical coercion, creates a potential for jury misunderstanding as to the nature of the pressure that is proscribed" and that, taken literally, the statute could be read

17

to encompass an employer's "legitimate stance" that the employer would not pay for passage home if an employee left early.).

But this is not what the Government is charging. The Government alleges that the Sous "threaten[ed] to deport the workers or send them home for complaining about wages, work conditions, confiscation of passports, and denial of promised visa extensions, knowing that such threats placed the workers in fear of serious economic harm." Indictment ¶ 17. The "serious harm" alleged includes "loss of family property and subsistence land used to secure substantial debts, leaving the workers and their families homeless and destitute." Id. The Indictment alleges that these threats "compelled the continued labor and service of the Thai workers." Id.

The difference between the Government's and the Sous' version of the facts is vast. Although the court agrees that the simple hypothetical statement advanced by the Sous would not, standing alone, support conviction, the Indictment alleges no such simple statement, but rather threats that the Sous allegedly knew would cause the Thai workers to fear serious financial harm, such as homelessness and destitution for themselves and their families. Moreover, according to the Indictment, these threats compelled the workers' continued labor and service. This is what the forced labor statutes prohibit. See 18 U.S.C. § 1589; Calimlim, 538 F.3d at 711; Bradley, 390 F.3d at 150. Although it

18

remains to be seen what facts the Government will prove at trial, on this motion, the court must rule on the facts as alleged in the Indictment.

C. Counts 7 and 8 Are Not Subject to Dismissal.

The Sous argue that Counts 7 and 8, alleging document servitude, are premised on actions taken in furtherance of the alleged forced labor counts, and must be dismissed for the same reasons Counts 1 through 6 must be dismissed. Mot. 10. As explained above, the court does not dismiss Counts 1 through 6 of the Indictment. Accordingly, Counts 7 and 8 remain as well.

V. CONCLUSION.

For the reasons set forth above, the court DENIES the Sous' motion to dismiss Counts 1 to 8 of the Indictment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 26, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

United States of America v. Sou; Criminal No. 09-00345 SOM; ORDER DENYING MOTION TO DISMISS COUNTS 1 TO 8 OF THE FIRST SUPERSEDING INDICTMENT.