IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,      )      CRIMINAL NO. 09-00345 SOM
                               )
          Plaintiff,           )      ORDER DENYING MOTION FOR
                               )      ATTORNEYS' FEES AND EXPENSES
     vs.                       )
                               )
ALEC SOUPHONE SOU,      (01) )
MIKE MANKONE SOU,       (02) )
                               )
          Defendants.          )
_____ )


ORDER DENYING MOTION FOR ATTORNEYS' FEES AND EXPENSES

I.      INTRODUCTION.

        The United States charged Defendants Alec and Mike Sou

with obtaining forced labor from forty-four Thai nationals

between 2003 and 2005, and with related offenses.  Shortly after

trial began, the United States dismissed all charges against the

Sous.  The Sous now seek to recover attorneys' fees and costs

pursuant to the Hyde Amendment on the ground that the case

against them was frivolous.  The court denies the motion.

II.     BACKGROUND.

        A grand jury first indicted the Sous on August 27,

2009.  See Indictment ("Original Indictment"), Aug. 27, 2009, ECF

No. 1.  The Original Indictment charged (1) conspiracy to commit

forced labor in violation of 18 U.S.C. §§ 371 and 1589; (2)

conspiracy to commit document servitude in violation of 18 U.S.C.

§§ 371 and 1592, allegedly in the course of violating § 1589; and

(3) conspiracy to commit visa fraud in violation of 18 U.S.C. §§ 371 and 1546. Id.

The Original Indictment alleged that the Sous had participated in a scheme to recruit workers from Thailand to work on the Sous' commercial farm, Aloun Farms, on Oahu, and that the workers were then forced to work under threat of serious financial harm. Original Indictment ¶ 17.

Each of the Sous entered into a plea agreement pursuant to which each pled guilty to conspiracy to commit forced labor. See Memorandum of Plea Agreement, Jan. 13, 2010, ECF Nos. 38, 39; Acceptance of Plea of Guilty, Feb. 18, 2010, ECF No. 49. While the court accepted the guilty pleas, it left the separate issue of acceptance of the plea agreements for the sentencing hearing.

The sentencing proceedings spanned more than one hearing. In the course of those hearings, the Sous, in the hope of avoiding lengthy prison terms, contested certain factual assertions that, if relied on by the court, might have enhanced their sentences. The Sous argued vigorously that their guilty pleas remained in effect in spite of their challenges to various factual assertions. Thus, for example, Mike Sou's counsel argued, "Again, at no time will I suggest to you that they are not, in our opinion, guilty of participation in this conspiracy. But what I want to argue to you is that none of the victims said anything to implicate these defendants in the most serious and

lurid allegations that have been made." Transcript of
Proceedings on July 19, 2010, for Continued Sentencing/Various
Motions ("Sentencing Hearing 1") at 73:20-24, ECF No. 118.
Defense counsel continued, "We do not in any way seek to withdraw
those pleas or to in any way minimize the fact that the
conspiracy occurred and that these two men were part of it." Id.
at 81:7-9.

This court expressed concern about whether the Sous
were retracting various admissions made in the plea agreements.
Thus, for example, the court asked, "And is Alec Sou agreeing
with paragraph 25 of his plea agreement, which says that he told
the Thai workers that he would send them home to Thailand if they
were disobedient, failed to follow directions, or if they tried
to leave, knowing of the workers' debts in Thailand and the
workers' fear of losing their family homes and land?" In
response, Alec Sou indicated that he wanted a chance to speak
with his attorney. Id. at 114:24 - 115:5. See also id. at
119:16 - 124:25 (Alec Sou stating that he himself did not do what
is asserted in paragraph 25 of his plea agreement).

The court also questioned whether, if the Sous were
retracting certain factual admissions contained in their plea
agreements, there was sufficient factual support for their guilty
pleas. Id. at 124:5 - 126:1. Ultimately, at the sentencing
hearing on September, 9, 2010, citing concerns about whether the

Sous were disputing provisions in the plea agreements they had signed, the court rejected the plea agreements. Transcript of Proceedings on Sept. 9, 2010, for Continued Sentencing/Various Motions ("Sentencing Hearing 2") at 27:22 - 28:4, ECF No. 119. Once the court rejected the plea agreements, it advised the Sous that they could withdraw their guilty pleas, which they did. Sentencing Hearing 2 at 29:6-16. The case was then set for trial.

On October 27, 2010, a twelve-count First Superseding Indictment was filed. First Superseding Indictment ("Indictment"), Oct. 27, 2010, ECF No. 127. This Indictment charged the Sous with one count of conspiracy to commit forced labor, five counts of forced labor, two counts of document servitude, one count of visa fraud conspiracy, two counts of harboring aliens for financial gain, and one count of obstructing or impeding an official proceeding. Id.

Jury selection began on July 27, 2011, and concluded the next day. See ECF Nos. 266-67. On July 29, 2011, the parties presented their opening statements, and two witnesses for the United States testified. Following a break that included the weekend, trial resumed on August 2, 2011. On that day, the jury heard testimony by Matee Chowsanitphon, a major witness for the United States who had pled guilty to a crime related to the charges against the Sous. In the course of being cross-examined

4

by the defense, Chowsanitphon testified that he had pled guilty after learning from counsel for the United States during grand jury proceedings that he had broken the law by obtaining recruiting fees from Thai workers. In fact, such fees were not illegal at the time in issue. The lead counsel for the United States at trial was the attorney who had conducted the grand jury proceeding in issue. During trial, that attorney, in response to the court's questions out of the presence of the jury, conceded that her statement about the illegality of recruiting fees before the grand jury was inaccurate. Shortly thereafter, she informed the court that she was experiencing symptoms of a pre-existing medical condition, and the court ended trial proceedings early that day. Chowsanitphon's testimony continued the next day, August 3, 2011, without that attorney but with the continued participation of other attorneys for the United States who had been active throughout trial proceedings.

On August 4, 2011, the United States moved to dismiss all charges against the Sous. The court granted the motion. <u>See</u> ECF No. 289. On September 2, 2011, the Sous brought the present motion to recover attorneys' fees pursuant to the Hyde Amendment. Defendants Alec Souphone Sou and Mike Mankone Sou's Notice of Motion and Motion for Attorney's Fees and Expenses Pursuant to Hyde Amendment ("Motion"), Sept. 2, 2011, ECF No. 299.

III.     LEGAL STANDARD.

The Hyde Amendment permits a prevailing defendant in a criminal prosecution to recover legal fees upon showing that the United States' position was either vexatious, frivolous, or in bad faith.  United States v. Capener, 608 F.3d 392, 400 (9th Cir. 2010) (citing 18 U.S.C. § 3006A note).  The Amendment provides in relevant part:

> the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

Pub. L. No. 105-119, S 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes). The Hyde Amendment test is "disjunctive--satisfaction of any one of the three criteria (vexatiousness, frivolousness, or bad faith) should suffice by itself to justify an award."  United States v. Braunstein, 281 F.3d 982, 994 (9th Cir. 2002).  A moving defendant bears the burden of proving entitlement to fees. Id.

The Hyde Amendment targets "prosecutorial misconduct, not prosecutorial mistake."  Capener, 608 F.3d at 401 (quoting Braunstein, 281 F.3d at 995).  "[M]ere faulty judgment is not vexatious, frivolous, or in bad faith."  Id (citing United

6

States v. Tucor Intern., Inc., 238 F.3d 1171, 1170 (9th Cir. 2001)).  The court is not to engage in "an exercise in 20/20 hindsight based solely on reasonableness."  Id.

IV.     ANALYSIS.

The Sous argue that the charges in the Indictment were unfounded and that the United States failed to conduct a sufficient investigation before bringing this case.  As a result, the Sous contend, the United States' position throughout the proceedings was frivolous under the Hyde Amendment.

While the Hyde Amendment does not define the term "frivolous," the Ninth Circuit has defined a "frivolous" case as "one that is groundless. . . . [A] case is frivolous when the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous."  Capener, 608 F.3d at 401 (quoting United States v. Manchester Farming Partnership, 315 F.3d 1176, 1183 (9th Cir. 2003)).  A showing that a jury may have had reasonable doubt is not enough, as saying "in hindsight that a case could not be proved beyond a reasonable doubt is hardly the same as showing that the case was unfounded."  United States v. Sherburne, 249 F.3d 1121, 1127 (9th Cir. 2001).

The United States urges the court to look at the case as a whole to determine whether it was frivolous, rather than assessing individual allegations or charges.  See United States v. Shaygan, 652 F.3d 1297, 1315 (11th Cir. 2011) ("The Hyde

7

Amendment allows an award of attorney's fees and costs against the United States only when its overall litigating position was vexatious, frivolous, or in bad faith."); <u>United States v. Schneider</u>, 395 F.3d 78, 90 (2d Cir. 2005) (Hyde Amendment "does not allow an award for any instance of vexatious, frivolous, or bad-faith conduct. An award is allowed only where the court finds that '*the position of* the United States was vexatious, frivolous, or in bad faith.'" (quoting the Hyde Amendment) (emphasis in original)); <u>United States v. Heavrin</u>, 330 F.3d 723, 725 (6th Cir. 2003) ("When assessing whether the 'position of the United States was vexatious, frivolous, or in bad faith,' the district court should . . . make only one finding, which should be based on the 'case as an inclusive whole.' A count-by-count analysis is inconsistent with this approach." (citations omitted)); <u>Gray Panthers Project Fund v. Thompson</u>, 304 F. Supp. 2d 36, 42 (D.D.C. 2004) (adopting the Sixth Circuit's rule that districts courts are to assess the United States' position as a whole); <u>United States v. Pritt</u>, 77 F. Supp. 2d 743, 748 (S.D. W. Va. 1999) ("[F]or the purposes of reviewing a Hyde Amendment application, . . . a court should examine the entire case.").

The Ninth Circuit has yet to rule on this issue. In <u>Capener</u>, the court addressed a district court's decision to award a defendant attorney's fees based on only one of the charges after conducting a "piecemeal analysis of the government's case."

608 F.3d at 392. The United States argued on appeal that this piecemeal approach was erroneous, and that the district court should have asked "whether the case--viewed as a whole--met the Hyde Amendment's standard for an award of fees." <u>Id.</u> The Ninth Circuit did not reach the issue because it found that, regardless of whether the piecemeal approach was appropriate, the charge at issue was not frivolous. <u>Id.</u> The lack of a definitive Ninth Circuit statement on the appropriateness of a piecemeal analysis does not affect this court's ruling. Whether the court reviews each charge separately for frivolousness or considers the case as a whole, the court's conclusion is that the Sous do not establish that the United States' position was frivolous.

A.   <u>Forced Labor Charges.</u>

The case against the Sous centered around the six forced labor charges. Count 1 of the Indictment alleges that the Sous participated in a conspiracy to commit forced labor between April 1, 2003, and February 8, 2005, in violation of 18 U.S.C. §§ 371 and 1589(a). Indictment ¶ 17. The Indictment states:

> The object of the conspiracy was to devise a
> scheme to: obtain and maintain a source of
> cheap and compliant labor by using false
> promises to entice workers to pay substantial
> up-front recruitment fees; by inducing
> workers, in reliance on the false promises,
> to pay the recruitment fee by obtaining high-
> interest loans secured by their family homes
> and subsistence lands as collateral; and to
> compel the workers' continued labor and
> service through threats to deport the workers
> or send them back with no way to pay off

9

their debt, thus holding the workers in fear
of serious economic harm, including loss of
family property.

Id. ¶ 7.

The Indictment further alleges:

[The Sous] compelled the continued labor and
service of the Thai workers by threatening to
deport the workers or send them home for
complaining about wages, work conditions,
confiscation of passports, and denial of
promised visa extensions, knowing that such
threats placed the workers in fear of serious
economic harm, including loss of family
property and subsistence land used to secure
substantial financial debts, leaving the
workers and their families homeless and
destitute.

Id. ¶ 17.

Counts 2 through 6 allege that, between June 1, 2004,
and February 28, 2005, the Sous "did knowingly provide and
obtain, and attempt to provide and obtain, the labor and services
of [R.U.S. (Count 2), S.W. (Count 3), C.P. (Count 4), S.P. (Count
5), and S.J. (Count 6)], [] Thai national[s], by means of a
scheme, plan and pattern intended to cause [R.U.S., S.W., C.P.,
S.P., and S.J.] to believe that if [they] did not perform such
labor and services, that [they] and another person would suffer
serious harm." Indictment at 13-15. Counts 2 through 6 each
allege that this conduct violated 18 U.S.C. §§ 1589(a) and
1594(a) and (2). Id.

The Sous do not establish that these charges were
frivolous. The United States says it based the forced labor

10

charges on interviews with over thirty Thai workers who expressed
fear that they would face serious harm if they did not continue
working at Aloun Farms; on surveillance of the Aloun Farms
property; and on review and analysis of evidence obtained from
the Bureau of Immigration and Customs Enforcement and the
Department of Labor.  <u>See</u> United States' Response to Defendants'
Hyde Amendment Motion Ex. A ("Brown Affidavit") ¶ 9, ECF
No. 306-1.

Of particular significance to the court are the Sous'
pleas of guilty to the charge of conspiracy to commit forced
labor in the Original Indictment.  A guilty plea requires much
more than a mere statement that one is guilty.  Pursuant to Rule
11(b) of the Federal Rules of Criminal Procedure, a defendant who
pleads guilty must do so under oath and must participate in a
court proceeding in which a judge determines that the defendant
understands his rights, the nature of each charge to which he is
pleading, the consequences (including the maximum prison term) of
pleading guilty, the manner in which his sentence will be
determined, and any terms in his plea agreement that affect his
right to appeal or to collaterally attack his sentence.  Before
accepting a guilty plea, the judge must address the defendant
personally in open court and determine that his plea is voluntary
and not the result of force, threats, or promises beyond what is
promised in the plea agreement.  The judge must also determine

that there is a factual basis for the guilty plea.  Rule 11 was complied with in this case.  <u>See</u> Transcript of Proceedings on January 13, 2010, for Motion for Withdrawal of Not Guilty Plea and to Plead Anew, ECF No. 93.

During the Rule 11 hearing, Magistrate Judge Kevin Chang, who was conducting the hearing with the Sous' consent pursuant to their waiver of a hearing before a district judge, asked the Sous to state in their own words what they had done that constituted the crime to which they were pleading guilty. In response, the Sous referred to having understood "at the time" (i.e., at the time they made an agreement with recruiters to hire Thai workers) that the recruiters were collecting recruiting fees.  <u>Id.</u> at 22.  However, the United States notably made no reference to any illegality in the charging of recruiting fees. Indeed, the United States could not have misinformed the Sous "at the time," which was long before any investigation into the Sous' alleged criminal activity had begun.  The United States provided Magistrate Judge Chang with an oral summary of what it would prove if the case went to trial, and the Sous agreed that what the United States said about them and their conduct was true. <u>Id.</u> at 23:11 - 32:5.  Magistrate Judge Chang discussed the written plea agreements with the Sous, pointing in particular to the factual stipulations in paragraphs 7 through 25.  The Sous

said they had read the statement of facts carefully and that it was true in every respect.  Id. at 19:24 - 20:24.

Even when the court expressed concern at the later sentencing hearing about whether accepting the Sous' challenges to certain factual allegations would leave the court with admissions sufficient to support their guilty pleas, the Sous insisted that they were in fact guilty of conspiracy to commit forced labor.  See Sentencing Hearing 2 at 4:14 - 5:9 (court's concern); 7:9-18 and 8:20 - 9:7 (Mike Sou's attorney acknowledges actions by Mike Sou); 16:19-21 (Alec Sou's counsel states that "we've been adamant about the culpability of Mr. Sou, Alec Sou, and Mr. Michael Sou"); 18:17-19 (Alec Sou's counsel states, "Mr. Alec Sou was, in fact, guilty of being a participant in the conspiracy, and he's never denied that."); 20:8-13 and 21:4-12 (Alec Sou's attorney describes Alec Sou's presence at certain events and says "this makes him guilty" and "that doesn't get my client off the hook").

The Sous do not now point to any error or misunderstanding created by the United States that caused them to enter the guilty pleas that the court, after rejecting the plea agreements, allowed them to withdraw.  Specifically, unlike the witness Chowsanitphon, the Sous have never maintained that their guilty pleas flowed from any misinformation about the law supplied by the United States.

It is difficult for the court to accept the Sous'
present contention that the charge of conspiracy to commit forced
labor was frivolous when at one point they were adamantly
maintaining that they were guilty of that very charge in the face
of questions from the court as to whether the record contained
sufficient unchallenged facts to support their guilty pleas.  If
the forced labor conspiracy charge was not frivolous, it is no
great leap to find the substantive forced labor charges similarly
not frivolous.

Moreover, the Sous present no authority suggesting that
the forced labor charges were either foreclosed by binding
precedent or obviously wrong.  Nor do the Sous point to specific
elements of the crimes charged that the United States knew it
could not prove.  At most, the Sous analogize their case to
United States v. Braunstein, 281 F.3d 982 (9th Cir. 2002).
Braunstein is clearly distinguishable.

In Braunstein, the Ninth Circuit reversed the district
court's order denying fees.  The Ninth Circuit stated that the
United States' position was frivolous given information the
United States had that the defendant was not guilty.  Id.  The
defendant had been charged with wire fraud and other related
crimes in connection with his purchases of computers from Apple
Latin America, a subdivision of Apple Computers.  Id. at 984.
The United States alleged that it was permissible for the

14

defendant to resell the computers in Mexico, but that the
defendant deceived Apple Latin America by secretly reselling them
for substantially lower prices in the United States.  Id.
at 989-90.  No grand jury witness testified to any actual
misrepresentation by Braunstein that could have supported a fraud
charge.  Id. at 996.  Of importance to the Ninth Circuit was the
prosecutor's "reason to believe, based on information from four
independent sources," that Apple Latin America employees sold
computer products to distributors knowing the products would be
resold outside of Latin America.  Id.  The four sources were
(1) an Apple Latin America employee who told the prosecution that
the employee sold the defendant computers that the employee
understood the defendant was allowed to sell in the United
States; (2) Apple Latin America employees who indicated that they
knew that their customers were selling computers in the United
States; (3) a letter from the defendant's attorney to the
Assistant United States Attorney directing the AUSA to evidence
that the defendant had not committed fraud, such as registration
records and warranty forms for computers that the defendant had
sold to United States distributors that were returned to Apple;
and (4) a report prepared by a private investigator indicating
that Apple Latin America employees had themselves participated in
selling their products in other markets, including the United
States, at low prices to boost sales.  Id.  These sources

15

documented Apple Latin America's endorsement of the defendant's sales in the United States and thus negated any charge of fraud. Id.

None of what the Sous rely on is analogous to the four independent sources in Braunstein.

The Sous first assert that the forced labor charges rested on a faulty allegation that the recruiting fees charged to the Thai workers were illegal. According to the Sous, because the recruiting fees were not actually illegal at the time, the forced labor charges must be frivolous. The problem with this argument is that the forced labor charges did not depend on any illegality in the recruiting fees. Indeed, the Indictment does not allege any such illegality. Instead the Indictment alleges that the Sous made the workers fear serious economic harm if they could not repay the money they had borrowed to pay the recruiting fees. The United States' contention was that this fear forced the workers to remain at Aloun Farms, even though the Sous allegedly failed to provide the promised wages and working conditions. Because the fear allegedly instilled by the Sous was in no way dependent on whether the recruiting fees were legal or illegal, the Sous are unpersuasive in arguing that the United States' mischaracterization of the fees as illegal renders the forced labor charges frivolous.

The Sous next argue that the forced labor charges were

unfounded because the United States had direct evidence that the
workers did not fear serious economic harm.  The Sous point to
written contracts signed by each of the workers stating that a
worker who decided to return to Thailand would be reimbursed his
or her recruitment fees and transportation costs by the Thai
recruiter.  The Sous contend that, given the contracts, the
workers could not have been forced to continue to work at Aloun
Farms out of fear of serious economic harm.  The United States
responds that it understood the workers' fear of serious economic
harm to have been based on their understanding of the terms of
employment once they arrived in Hawaii, notwithstanding the
language in the contracts.  Some of the workers told FBI
investigators that they were told in Hawaii that the contract was
just a "piece of paper."  Brown Affidavit ¶ 29.  In addition, a
number of workers stated that they were not given an opportunity
to read and understand the documents, and that they signed the
contracts out of fear of forfeiting their recruiting fees.  Id.
¶ 13.  The Sous do not show that the United States' position was
foreclosed by precedent or obviously wrong.

    The Sous also argue that the Indictment made an
incorrect and unfounded allegation that the Sous had improperly
deducted amounts from the workers' paychecks and had failed to
pay the workers the wages promised in their contracts.  The Sous
assert that the deductions were consistent with the contract

language providing that meal expenses and taxes would be deducted. Many workers also had Aloun Farms deduct money from their paychecks to wire home. According to the Sous, far from underpaying the workers, the Sous paid them for more hours than they actually worked. Even when heavy rainfall prevented them from working full time, the workers received at least three-fourths of their full-time pay, pursuant to the contract. Even if the Sous had evidence that refuted the charges, that does not render the United States' position frivolous, given the workers' statements to the FBI that they were paid far less than promised. Brown Affidavit ¶ 16.

Similarly insufficient to show frivolousness are the Sous' challenges to allegations that Aloun Farms controlled the workers' movements and that the Sous housed the workers in storage units. The Sous assert that these allegations are false, and that the United States would have known they were false had it properly investigated the situation. But the forced labor charges would not have been rendered meaningless even if those allegations were false. The Sous do not establish that a forced labor charge could not have been brought absent those particular allegations. Indeed, neither control of movement nor substandard housing is a necessary element of a forced labor charge. <u>See</u> <u>United States v. Bradley</u>, 390 F.3d. 145, 153-154 (1st Cir. 2004) (finding no error in a jury instruction stating that whether the

alleged forced labor victims "had an opportunity to flee is not determinative of the question of forced labor if either or both of the defendants placed [the victim] in such fear or circumstances that he did not reasonably believe he could leave"), vacated on other grounds, 545 U.S. 1101 (2005) (vacating and remanding in light of United States v. Booker, 543 U.S. 220, 125 (2005)).

As the forced labor conspiracy and substantive forced labor charges are the heart of this case, this court's conclusion that those charges, viewed piecemeal, were not frivolous also compels the conclusion that the case, viewed as a whole, was not frivolous.

B.    Related Charges.

Counts 7 and 8 of the Indictment charged the Sous with document servitude.  The Indictment alleges that, between September 4, 2004, and November 30, 2004:

> [The Sous] knowingly destroy[ed],
> conceal[ed], remov[ed], confiscat[ed], or
> possess[ed] any actual or other purported
> passport or other immigration document, or
> any other actual [or] purported government
> identification document of [S.P. (Count 7)
> and R.U.S. (Count 8)]: (a) in the course of a
> violation of 18 U.S.C. § 1589; [and] (b) with
> intent to violate 18 U.S.C. § 1589 . . . .

See Indictment at 15-17.

In contending that these charges were frivolous, the Sous point to testimony by the United States' key witness that

the workers' passports were returned to them shortly after Aloun

Farms used them to create worker identification cards. Evidence

contradicting the United States' allegations does not, however,

necessarily establish frivolousness. The United States had

statements by numerous workers that the Sous had confiscated

their passports. Brown Affidavit ¶¶ 15, 30. Nor does evidence

that passports were returned preclude a charge of document

servitude relating to periods before that return. <u>Cf.</u> <u>United</u>

<u>States v. Dann</u>, 652 F.3d 1160, 1173 (9th Cir. 2011) ("The

[document servitude] statute . . . requires merely that the

defendant 'possess []' the document, not that the defendant lock

it up."). The court sees no basis for designating Count 7 and

Count 8 as frivolous.

Count 9 charged the Sous with conspiracy to commit visa

fraud. The Sous were charged with:

> knowingly subscribing as true a false
> statement with respect to a material fact in
> an application, affidavit, and other document
> required by the immigration laws . . . and
> knowingly presenting to a U.S. government
> entity, agency, or department, any such
> application, affidavit, and or other document
> which contains any such false statement and
> which fails to contain any reasonable basis
> in law or fact.

Indictment at 18.

The Sous claim that the United States based Count 9 on

the erroneous allegations that the Sous (1) failed to disclose on

required Department of Labor forms the payment of recruitment

fees by the Thai workers, (2) failed to disclose that they paid

for the workers' transportation fees out of the recruitment fees,

and (3) misrepresented the terms and conditions of the workers'

rate of pay and working hours.  The Sous argue, moreover, that

they were not obligated to disclose the recruitment fees and how

the defendants used the fees, as the applicable regulations at

the time did not prohibit recruitment fees, and that the workers

did not receive less pay or work fewer hours than were promised.

These arguments do not establish that Count 9 was frivolous.  The

Indictment charged the Sous with misrepresenting material facts,

not with concealing illegal recruiting fees.  Regardless of the

legality of the fees, the United States brought the charge on the

grounds that the fees were a material term and condition of

employment and that material terms of employment should have been

disclosed on the forms.  The court has already rejected the

contention that the allegations about underpaying the workers

justify a fee award.

Counts 10 and 11 charged the Sous with harboring two

aliens, T.M. and K.T., for financial gain, in violation of 8

U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i).  Indictment

at 18-19.  The Sous argue that these charges were frivolous

because there was no evidence that the Sous knew T.M. and K.T.

were illegal aliens.  The Sous say they believed T.M. and K.T.

were in the country legally based on government-issued employment

authorization cards that had not expired and on T.M.'s and K.T.'s attempts to find a way to continue working in the United States. The United States says Counts 10 and 11 were based on information Agent Brown obtained from people close to Aloun Farms. According to those people, the Sous allowed two workers whose visas had expired to continue to work at Aloun Farms and paid those workers in cash. By contrast, workers with valid visas were not paid in cash, allegedly signaling that the Sous paid cash knowing that the two workers were illegal aliens. Brown Affidavit ¶ 27. The United States argues that the employment authorization cards were at best relevant to the Sous' mens rea, which the Sous were entitled to challenge at trial. The cards were not, however, proof that Counts 10 and 11 were frivolous. Certainly the cards were not in the nature of binding precedent and did not show that Counts 10 and 11 were obviously wrong. This court concludes that the cards do not, without more, establish that the Sous could not have known that T.M. and K.T. were working illegally. The Sous do not establish that Counts 10 and 11 were frivolous.

C.    Obstruction of Justice Charge.

Count 12 charged the Sous with obstructing or impeding an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). Indictment at 20. Count 12 alleges that the Sous "corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, by offering as evidence in court, a video

that they designed and created, knowing that the information included in the video contained false and misleading representations." Id.

The United States brought this charge based on a video played for the court at the sentencing hearing held on July 19, 2010. The video was introduced following testimony that some of the Thai workers gave during sentencing proceedings. Those workers said that they were forced to live in substandard conditions and eat spoiled or rotten food, and that they were prevented from leaving Aloun Farms. See Defendants Alec Souphone Sou and Mike Mankone Sou's Motion to Unseal Grand Jury Transcripts and Materials, Jan. 25, 2011, ECF No. 149. In the video, individuals identified themselves as Aloun Farms employees who performed cooking and driving tasks. Also on the video were purported field workers who described working conditions at Aloun Farms as having been far better than described by the workers who testified for the United States. Brown Affidavit ¶ 42. The individuals in the video had allegedly observed the working conditions during their interactions with the Thai workers. Id.

After the hearing, Agent Brown received an email from someone claiming to have watched the video in court. The email said individuals speaking in the video had lied. United States' Response to Defendants' Motion to Unseal Grand Jury Transcripts and Materials at 4, ECF No. 155. According to the United States,

the FBI investigated and concluded that the individuals in the video had made misrepresentations and that Defendants had presented the video to mislead the court. The United States brought Count 12 based on the FBI's conclusion.

The Sous contend that Count 12 was frivolous for reasons they had argued in their earlier motion to unseal the grand jury transcripts.[1] <u>See</u> Motion at 17. In sum, the Sous contend that the United States did not have any evidence to support this charge, that the United States ignored defense counsel's insistence that the Sous had not participated in the preparation of video, that the United States failed to adequately investigate the matter, that the law did not support the charge, and that the charge was motivated by vindictiveness. Motion at 17. The Sous are unpersuasive in arguing that Count 12 was frivolous.

The Brown Affidavit states that, through an investigation that included witness interviews, Agent Brown verified the identity of the individuals in the video and determined that the alleged cook had not actually cooked for the Thai workers; that the alleged driver had not been the workers'

---

[1] Magistrate Judge Chang denied the motion without addressing the merits of the charge. Order Denying Defendants Alec Souphone Sou and Mike Mankone Sou's Motion to Unseal Grand Jury Transcripts and Materials, Apr. 4, 2011, ECF No. 164. The Sous appealed, and this judge affirmed. Order Affirming Magistrate Judge's Order Denying Defendants' Motion to Unseal Grand Jury Transcripts and Materials, Apr. 15, 2011, ECF No. 167.

regular driver, instead driving the Thai workers on only a few occasions; and that the individuals who described the Thai workers' living conditions had no actual knowledge of the Thai workers' condition and were instead referring to the different living conditions of Micronesian workers. Brown Affidavit ¶¶ 43, 44. Agent Brown also determined that "individuals closely associated with the defendants participated in its production and that it was produced in close physical proximity to the Aloun Farms office." Id. ¶ 44.

The Affidavit of Agent Brown shows that the United States had some basis for bringing the obstruction charge. The Sous present no authority or evidence indicating that the United States' position was foreclosed by precedent or obviously wrong. See United States v. Sherburne, 506 F.3d 1187, 1189-90 (9th Cir. 2007) (reversing a determination that a case was "vexatious" because, inter alia, the United States was entitled to "characterize the evidence in the light most favorable to the government"). Moreover, while the Sous say they did not participate in the preparation of the video, they were present in the courtoorm when it was played. If the video contained misrepresentations, they can hardly use their lack of involvement in its preparation as justification for their failure to so inform their attorneys.

In <u>Capener</u>, the Ninth Circuit reversed a finding of frivolousness even though a more thorough investigation by prosecutors would have revealed that their theory of the case was factually incorrect. 608 F.3d at 401-02. In that case, the Untied States brought charges of health care fraud against a surgeon based in part on an allegation that the surgeon had billed for unnecessary surgeries. <u>Id.</u> at 394. Another doctor's conclusion after a review of the defendant's records formed the basis of the allegation. <u>Id.</u> at 396. At trial, however, the defense established that the expert witness had misunderstood the defendant's records, which led the district court to dismiss the charges regarding the allegedly unnecessary surgeries. <u>Id.</u> at 398. The district court later awarded the defendant attorneys' fees under the Hyde Amendment, concluding that the United States' failure to more throughly investigate had resulted in a frivolous charge. <u>Id.</u> at 399.

Distinguishing the case from <u>Braunstein</u>, the Ninth Circuit reversed and held that the United States' "regrettable mistake--a clear failure by the prosecution to do its homework"-- did not warrant attorneys' fees under the Hyde Amendment. <u>Id.</u> at 401-02. The court stated that "a failure to sufficiently investigate generally can rise to the level of frivolousness only when the government had some affirmative reason to know that further investigation was needed." <u>Id.</u> In <u>Capener</u>, it was

reasonable for the prosecution to rely on the expert witness and not to investigate further.  Id.

The present case similarly does not present facts that warrant attorneys' fees.  While the Sous argue that the United States should have conducted a more thorough investigation, "[t]he Hyde Amendment does not require excellence."  Id. at 402. The Sous' attorneys' statements and conflicting testimony do not establish that the United States had an affirmative reason--such as the independent evidence proving that the charge was groundless in Braunstein--to investigate further.  In short, on the present record, the Sous do not meet their burden of showing that Count 12 was frivolous.  Moreover, if the Hyde Amendment requires that the court assess the case as a whole, a conclusion that only Count 12 was frivolous would not support the conclusion that fees should be awarded.

V.          CONCLUSION.

Because the Sous do not establish that either the case as a whole or any particular charge was frivolous, the court DENIES the Sous' motion for attorneys' fees pursuant to the Hyde Amendment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 30, 2011.



   /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

United States of America v. Sou; Criminal No. 09-00345 SOM; ORDER DENYING MOTION FOR
ATTORNEYS' FEES AND EXPENSES.